IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MARK ANTHONY BARNETT,           )
                                )
            Petitioner,          )
                                )
v.                              )        Case No. CIV-10-153-D
                                )
ERIC FRANKLIN, Warden,          )
                                )
            Respondent.          )

**REPORT AND RECOMMENDATION**

Mr. Mark Barnett is a state inmate requesting an evidentiary hearing and issuance of a writ of habeas corpus. On the claims involving Oklahoma law, insufficiency of the evidence, prosecutorial misconduct, ineffective assistance in the failure to seek instructions on lesser-included offenses, and excess in the sentence, the Court should deny habeas relief. For the claims involving ineffective assistance of trial counsel in the failure to investigate Sherry Ellis' potential testimony, the Court should grant an evidentiary hearing. With the need for such a hearing, the Court should defer consideration of: (1) the related habeas claim involving ineffectiveness of appellate counsel, and (2) the claim involving cumulative error.

FACTUAL BACKGROUND

In November 2001, Mr. Stanley Johnson opened his home to three men: Mark Barnett, Andre Hutson, and Levell McBroom. Transcript of Proceedings, Vol. II at pp. 352-53, 421-23, *State v. Barnett*, Case No. CF-2002-306 (Okla. Co. Dist. Ct. filed Dec. 15, 2006) ("Trial Transcript").

On November 5, 2001, numerous people gathered at the home, including Stanley Johnson, Beverly Meadows, Mark Barnett, Andre Hutson, Levell McBroom, Lincoln Edmundson, Claudine Flemming, Jerry Leslie, and Sherry Ellis.

Jerry Leslie testified that he, Mr. Johnson, and several "younger . . . males" were standing in the dining room when one of the men threw an empty beer can into a box. *Id.* at pp. 375-76, 394. Mr. Johnson protested, and the "black male" "pulled out a pistol and went to shooting in the floor." *Id.* at p. 376. Mr. Johnson yelled: "[Y]ou better not shoot me in my foot," and the two men started "tussling." *Id.* at p. 377. Eventually, the men were "tussling in the chair" with Mr. Johnson on the bottom. *Id.* at pp. 379-80. Mr. Leslie then left, but saw that the young black male was on top of Mr. Johnson in the chair. *Id.* at p. 382. By that time, the other males had gone outside. *See id.* Mr. Leslie identified these persons as Andre Hutson and Lincoln Edmundson. *See id.* at p. 388. But Mr. Leslie did not know the identity of the man "tussling" with Mr. Johnson. *See id.*

According to Lincoln Edmundson, the Petitioner was the man "wrestling" or "tussling" with Mr. Johnson. *Id.* at pp. 428-29. Mr. Edmundson reiterated that an argument had erupted when Mr. Barnett threw down a beer can in Mr. Johnson's home. According to Mr. Edmundson, the incident angered Mark Barnett and he shot a pistol into the floor. *Id.* at pp. 376, 428-29, 432. When the shots began, Messrs. Edmundson, Hutson, and McBroom left the house. *See id.* at pp. 431-33. The Petitioner and Mr. Johnson continued to wrestle, with Mr. Barnett in control of the gun. *Id.* at pp. 434-35. Eventually, Mr. Barnett was on top

of Mr. Johnson in a chair.  *See id.* at p. 435.  By the time that Mr. Edmundson left, more shots had been fired.  *See id.* at p. 436.

When the gunfire concluded, Mr. Barnett walked outside and asked Andre Hutson for another gun.  *See id.* at p. 438.  According to Mr. Edmundson, Andre Hutson gave the Petitioner his .38 handgun.  *See id.* at p. 439.  Mr. Barnett reentered the house and shot Ms. Beverly Meadows.  *See id.* at pp. 445-47.

Mr. Edmundson testified that shots had not been fired by himself, Mr. Hutson, or Mr. McBroom.  *Id.* at p. 447.

According to the State's medical examiner, Mr. Johnson suffered from two shots in the foot and died of gunshots to the right shoulder and stomach.  Trial Transcript, Vol. III at pp. 538, 543-44.  Beverly Meadows was shot three times, the fatal shot being delivered to the back of her head.  *See id.* at pp. 549-50.

An expert witness testified that the bullets removed from Mr. Johnson's body were .22 caliber projectiles, while the bullets removed from Ms. Meadow's body were from a .38 caliber weapon.  *See id.* at pp. 521-23.

## PROCEDURAL BACKGROUND

In state court, Mr. Barnett was convicted of two counts of first degree murder and was sentenced to concurrent terms of life imprisonment and life imprisonment without the possibility of parole.  *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at p. 1 (Feb. 12, 2010) ("Petition").  The Oklahoma Court of

Criminal Appeals ("OCCA") affirmed,[1] and the Petitioner unsuccessfully sought post-conviction relief in state court.[2] The OCCA affirmed the denial of post-conviction relief. Order Affirming Denial of Post-Conviction Relief, *Barnett v. State*, Case No. PC-2009-1075 (Okla. Crim. App. Feb. 11, 2010) ("OCCA Opinion on Post-Conviction").

## THE PETITIONER'S CURRENT CLAIMS

The present action followed, with Mr. Barnett alleging:

- insufficiency of the evidence,

- lack of jury instructions on lesser-included crimes,

- prosecutorial misconduct,

- excessiveness of the sentence involving life imprisonment without the possibility of parole,

- ineffective assistance of trial and appellate counsel, and

- cumulative error.

Petition at pp. 6, 8-9, 11 & Attachment at pp. 1-2; Brief in Support of Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 at pp. 12-34 (May 13, 2010) ("Petitioner's Brief in Support").

---

[1]    Opinion, *Barnett v. State*, Case No. F-2006-1128 (Okla. Crim. App. May 19, 2008) ("OCCA Opinion on Direct Appeal").

[2]    Application for Post-Conviction Relief, *Barnett v. State*, Case No. CF-2002-306 (Okla. Co. Dist. Ct. Aug. 14, 2009) ("Application for Post-Conviction Relief"); *see* Order Denying Application for Post Conviction Relief, *Barnett v. State*, Case No. CF-2002-306 (Okla. Co. Dist. Ct. Oct. 23, 2009).

STANDARD FOR HABEAS RELIEF

The Court should begin its analysis with determination of the standard for habeas review.

I.     <u>The Applicable Standard</u>

The applicable standard turns on how the state appellate court had treated the underlying issue.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment and the petitioner must demonstrate his right to habeas relief by a preponderance of the evidence. *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002) (independent judgment); *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (*per curiam*) (preponderance of the evidence).

If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For example, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented." AEDPA, 28 U.S.C. § 2254(d)(2) (2006).

The federal district court also engages in limited scrutiny of legal determinations when the state's highest court has addressed the merits. In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved

5

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  AEDPA, 28 U.S.C. § 2254(d)(1) (2006).

The threshold issue is whether federal law clearly establishes the constitutional protection underlying the Petitioner's claim.  "A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme Court]."  *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173 (2010).  For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings."  *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law."  *Id.* at 1017.

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent.[3]  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).[4]

---

[3]     *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008) ("If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved an unreasonable application of it." (citation omitted)).

[4]     Throughout the decision, the OCCA relied on case law that had not been decided by the Supreme Court.  *See* OCCA Opinion on Direct Appeal, *passim*; OCCA Opinion on Post-Conviction, *passim*.  However, the federal district court must defer to the OCCA's decisions as long as the result and reasoning were consistent with Supreme Court holdings.  *See Matthews v. Workman*, 577 F.3d

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedents. *See supra* p. 6 & note 3 (quoting *Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008)). Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions. *See House v. Hatch*, 527 F.3d at 1018. If prior Supreme Court cases do not "clear[ly] answer . . . the question presented," the habeas court cannot regard the application of federal law as unreasonable. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (*per curiam*) (citation omitted).

The reasonableness of the OCCA's application of Supreme Court precedent is affected by its relative specificity. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (citation omitted).

II.     Mr. Barnett's Challenge to the Current Law and Request for Independent Review

Mr. Barnett challenges the constitutionality of the AEDPA's "deference" standard and asks the Court to exercise its independent judgment on all of the claims. Petitioner's Brief in Support at pp. 8-11. This challenge is invalid.

---

1175, 1183 n.2 (10th Cir. 2009) (noting that state courts need not refer to, or even be aware of, controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them" (citations omitted)), *cert. denied*, __ U.S. __, 130 S. Ct. 1900 (2010).

The Petitioner argues that the "'deference' provisions"[5] in the AEDPA:

- "interfer[e] with the decision-making of the federal courts in an unconstitutional manner" and

- "requir[e] federal district courts to ignore the clear and binding precedents of the circuit courts above them if those precedents have not also been clearly established by the Supreme Court."

*Id.* at pp. 8-10.

The Supreme Court has repeatedly applied the statute.[6] The Supreme Court's repeated application of the AEDPA "solidifie[s]" its "constitutional foundation." *Crater v. Galaza*, 491 F.3d at 1129.[7]

---

[5] The "AEDPA itself 'never uses the term deference.' But [Supreme Court] cases have done so over and over again to describe the effect of the threshold restrictions in 28 U.S.C. § 2254(d) on granting federal habeas relief to state prisoners." *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 n.1 (2010) (citations omitted).

[6] *See Crater v. Galaza*, 491 F.3d 1119, 1129 (9th Cir. 2007) ("Although the [Supreme] Court has not squarely addressed [the AEDPA's] constitutional validity, for the past eleven years the Court has consistently applied AEDPA's standard of review to appellate habeas petitions." (citations omitted)).

[7] Acknowledging that the Supreme Court "has never actually held that AEDPA is constitutional," one commentator added:

As a practical matter, however, there is little question that the Court views AEDPA as constitutional. The Court has repeatedly refused to address the squarely presented question of the constitutionality of AEDPA.

Justin Marceau, *Un-Incorporating the Bill of Rights: The Tension Between the Fourteenth Amendment and the Federalism Concerns that Underlie Modern Criminal Procedure Reforms*, 98 J. Crim. L. & Criminology 1231, 1282 n.261 (2008) (citations omitted).

Five circuit courts have rejected similar challenges to the AEDPA based on separation of powers,[8] and an Oklahoma federal district court has upheld the constitutionality of the relevant statutory language.[9]  The Western District of Oklahoma is not bound by these decisions.  However, the solid thread of case law elsewhere is tied together by a persuasive rationale.  In one form or another, these courts rely on the court's remaining power to adjudicate the constitutionality of a conviction and Congress' indisputable authority to articulate the standard for relief when a petitioner has already obtained a decision in state court.[10]  The unanimity of this view, combined with the strength of its logic, should lead the

---

[8]      *See Evans v. Thompson*, 518 F.3d 1, 4-12 (1st Cir. 2008) (holding that the AEDPA did not violate Article III or the separation of powers doctrine); *Crater v. Galaza*, 491 F.3d 1119, 1126-30 (9th Cir. 2007) (holding that the deference provisions of the AEDPA did not violate the separation of powers doctrine); *Mueller v. Angelone*, 181 F.3d 557, 572-73 (4th Cir. 1999) (rejecting a claim that the AEDPA had prevented the exercise of judicial authority in violation of the Supremacy Clause and noting that a similar theory under the separation of powers doctrine had been "squarely foreclosed" in the Fourth Circuit); *Dufrene v. Brazoria County District Attorney Office*, 146 Fed. Appx. 715, 717 (5th Cir. Aug. 16, 2005) (unpublished op.) (holding that the AEDPA does not "violate the principle of separation of powers" (citation omitted)); *Lindh v. Murphy*, 96 F.3d 856, 868-70 (7th Cir. 1996) (holding that the deference language of the AEDPA "preserves rather than undermines federal courts' independent interpretive power"), *rev'd on other grounds*, 521 U.S. 320 (1997).

[9]      *Cummings v. Gibson*, 2006 WL 2434462, Westlaw op. at 6 (E.D. Okla. Aug. 11, 2006) (unpublished op.) (holding "that application of the AEDPA in Petitioner's case will not . . . violate the separation of powers doctrine"), *aff'd*, 506 F.2d 1211 (10th Cir. 2007).

[10]     For example, the Ninth Circuit Court of Appeals stated:

> Section 2254(d)(1) does not instruct courts to discern or to deny a constitutional violation.  Instead, it simply sets additional standards for granting relief in cases where a petitioner has already received an adjudication of his federal claims by another court of competent jurisdiction.  The Constitution does not forbid Congress from establishing such standards . . . .

*Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007).

federal district court to reject Mr. Barnett's constitutional challenge to the AEDPA. *See Lewis v. Beeler*, 949 F.2d 325, 331 (10th Cir. 1991) (stating that the reasoning by at least five other circuit courts was persuasive in light of the absence of any contrary circuit authority).

## ALLEGED VIOLATION OF OKLAHOMA LAW

In part, Mr. Barnett alleges violation of Oklahoma law. Petitioner's Brief in Support at pp. 21, 23, 25. But habeas relief does not lie solely for error under state law. *See Estelle v. McGuire*, 502 U.S. 62, 67, 71-72 (1991). Thus, the Petitioner could not obtain federal habeas relief even if his conviction had violated Oklahoma law. In these circumstances, the Court should reject the state-law claims.

## THE PETITIONER'S ALLEGATIONS CONCERNING INSUFFICIENCY OF THE EVIDENCE - GROUNDS ONE AND TWO

In his first and second grounds for relief, the Petitioner challenges the conviction on both counts based on insufficiency of the evidence. Petitioner's Brief in Support at pp. 12-20. In ground one, Mr. Barnett alleges that because of his intoxication, the State lacked sufficient evidence of "malice aforethought" to support the murder conviction. *Id.* at pp. 12-17. In his second claim, the Petitioner argues that even in the absence of intoxication evidence, the State lacked sufficient evidence of premeditation in Stanley Johnson's death because the fatal shots had taken place during a "tussle" and there had not been any evidence of "ill-will." *Id.* at pp. 18-20.

The OCCA rejected these claims on direct appeal. OCCA Opinion on Direct Appeal at pp. 4-9. This determination was reasonable based on the evidence and Supreme Court precedent.

## I.    The Clearly-Established Constitutional Requirement

Sufficiency of the evidence presents a question of law.[11] Thus, the federal district court should determine whether the Supreme Court has clearly established a constitutional requirement for the prosecution to elicit sufficient evidence of guilt. *See supra* p. 6. This question should be answered in the affirmative.

The United States Supreme Court clearly established a constitutional requirement involving the sufficiency of evidence in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[12] Under the Supreme Court decision, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319 (emphasis in original). In light of the flexibility in the test, the state court obtains

_____

[11]    *See Spears v. Mullin*, 343 F.3d 1215, 1238 (10th Cir. 2003) (stating in habeas proceedings that the Tenth Circuit Court of Appeals "review[s] sufficiency of the evidence as a question of law"); *see also Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003) (holding that when the petitioner challenged only the sufficiency of evidence to support the conviction, the court should regard the issue as a legal question).

[12]    *See Shobe v. McKune*, 276 Fed. Appx. 854, 857 (10th Cir. May 7, 2008) (unpublished op.) ("The 'clearly established federal law' applicable to this claim under 28 U.S.C. § 2254(d)(1) is the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).").

additional deference when it decides the sufficiency of evidence.[13] Ultimately, the dispositive question "'is whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard.'" *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citation omitted).

Under *Jackson*, the standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979). Therefore, the Court must consider Oklahoma law in connection with the habeas claim.

## II.   The Oklahoma Requirements for First Degree Murder

In Oklahoma, a person may be convicted of first degree murder if, with malice aforethought, he unlawfully caused another person to die. *See* Okla. Stat. tit. 21 § 701.7(A) (2001); OUJI-CR 4-61 (2d ed.). "Malice aforethought" is a "deliberate intention unlawfully to take away the life of a human being." Okla. Stat. tit. 21 § 701.7(A) (2001); *see also* OUJI-CR 4-62 (2d ed.) (similar definition). "The deliberate intent to take a human life must be formed before the act and must exist at the time a homicidal act is committed." OUJI-CR 4-62 (2d ed.). However, "[n]o particular length of time is required for formation of . . .

---

[13]     *See Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) ("the . . . (AEDPA) 'adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions'" (citation omitted)); *see also supra* p. 5 & note 5.

deliberate intent" and "[t]he intent may have been formed instantly before commission of the act."[14]

III.    The Petitioner's Allegation that His Intoxication Prevented a Finding of Malice Aforethought

In ground one, Mr. Barnett focuses on the element of "malice aforethought." *Supra* p. 10. According to the Petitioner, his intoxication prevented formation of the intent to kill. *Id.* This claim is invalid because the jury could reasonably have found an intent to kill.

Generally, voluntary intoxication does not shield a person from criminal liability. *See* Okla. Stat. tit. 21 § 153 (2001). However, Oklahoma recognizes that voluntary intoxication may sufficiently overcome a person's mental abilities to prevent formation of criminal intent.[15]

Against the backdrop of state law, the OCCA rejected the challenge to the sufficiency of the evidence and explained:

> Evidence of [Mr. Barnett's] intent is conflicting. However, it is within the exclusive province of the jury to resolve any conflicts in the evidence and determine the credibility of the witnesses. This Court will not disturb the jury's verdict if it is supported by competent evidence. Here, the jury apparently found [Mr. Barnett's] almost total memory lapse not so credible and that he was not so intoxicated and his mental abilities so overcome as to be

---

[14]    OUJI-CR 4-62 (2d ed.); *see* Okla. Stat. tit. 21 § 703 (2001) ("Premeditation: A design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into execution.").

[15]    *See Patton v. State*, 973 P.2d 270, 286 (Okla. Crim. App. 1998); *see also Spears v. Mullin*, 343 F.3d 1215, 1244 (10th Cir. 2003) ("Under Oklahoma law, . . . juries may consider voluntary intoxication to determine if a defendant had the intent to commit first-degree murder." (citations omitted)).

> unable to form the specific intent to kill. This finding is supported by sufficient competent evidence leading to the "unmistakable conclusion that [Mr. Barnett] fully intended the consequences of his acts." Therefore, we find the evidence sufficient to support the convictions for first degree malice aforethought murder.

OCCA Opinion on Direct Appeal at p. 8 (citations omitted). This determination constituted a reasonable determination based on the evidence and a reasonable application of Supreme Court precedent.

From the trial evidence, the jury could reasonably find that Mr. Barnett's intoxication did not prevent formation of an intent to kill.

First, the jury could have relied on Mr. Barnett's behavior when he retrieved a second weapon from Andre Hutson. Trial Transcript, Vol. II at pp. 438-39, 447-48; *see supra* p. 3.

Second, the jury could have relied on testimony that Mr. Barnett was able to chase Beverly Meadows from a bedroom into the yard. Trial Transcript. Vol. II at pp. 446-47.

Third, the jury could reasonably have inferred from the evidence that Mr. Barnett had fled from the scene after the shootings. Mr. Barnett could not recall having fled, but acknowledged that he was no longer present when the police arrived. Trial Transcript, Vol. V at pp. 660-61.

Finally, Mr. Barnett admitted that after taking the drugs, he remained able to walk to the house; to communicate with others; and to use his legs, feet, and arms. *Id.* at pp. 661-62.

From this evidence, the jury could reasonably have found that the drugs had not prevented formation of a criminal intent on the part of Mr. Barnett.

IV.     The Petitioner's Allegation Regarding "Malice Aforethought" and the Killing of Stanley Johnson During a Struggle

In his second ground, Mr. Barnett argues that he could not have killed Mr. Johnson with "malice aforethought" because the homicide had taken place during a struggle. *Supra* p. 10. On direct appeal, the OCCA rejected the claim with this explanation:

> As addressed in Proposition I, sufficient evidence was presented to find beyond a reasonable doubt that [Mr. Barnett] intentionally killed the victims with malice aforethought. In addition to instructions on first degree malice murder and voluntary intoxication, the jury was also given the uniform instructions for first degree manslaughter by means of a dangerous weapon. . . . . If the jury doubted [Mr. Barnett's] intent to kill, they could have returned a verdict for manslaughter. However, after hearing all the evidence they chose not to do so.

OCCA Opinion on Direct Appeal at p. 9 (citations omitted). This determination constituted a reasonable determination of the evidence and application of Supreme Court precedent.

The evidence was that after a verbal exchange about a beer can, Mr. Barnett took out a gun and fired. *See supra* p. 2. He then wrestled the victim into a chair, with the Petitioner in a dominant position. *See id.* Eventually, Mr. Barnett shot Mr. Johnson in the shoulder and stomach. *See id.* p. 3.

The question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979) (emphasis in original); *see supra* p. 11. The federal district court should answer in the affirmative.

Under Oklahoma law, the fact-finder can ordinarily infer a design to cause the death from the act of killing.[16] The design may be formed instantly as a matter of state law. *See supra* pp. 12-13 & note 14. Under Oklahoma law, the Petitioner's argument is flawed because Mr. Barnett's intentions could have escalated during the struggle and resulted in a finding of malice.[17]

The escalating intensity of the fight is supported by the testimony of a forensic examiner. This individual testified that Mr. Johnson had four gunshot wounds,[18] which suggested malice from Mr. Barnett's firing of his gun at least four times.

A rational jury could have found sufficient evidence that when he pulled the trigger multiple times, Mr. Barnett intended to kill Stanley Johnson. As a result, the OCCA reasonably applied the *Jackson v. Virginia* standard and the federal district court should reject the habeas claim.

---

[16]     *See* Okla. Stat. tit. 21 § 702 (2001) ("A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed.").

[17]     *See Henderson v. State*, 661 P.2d 68, 69 (Okla. Crim. App. 1983) (holding that sufficient evidence of malice murder existed and rejecting the defendant's argument that the killing had taken place spontaneously during a fight); *see also Spears v. Mullin*, 343 F.3d 1215, 1242-43 (10th Cir. 2003) (holding that sufficient evidence existed regarding malice, for conviction of first degree murder, when the jury could reasonably have inferred an intent to kill during an altercation); *accord Gomes v. Brady*, 564 F.3d 532, 539 (1st Cir. 2009) (concluding that the progression of events during an altercation "amply support[ed] a finding of premeditation" for conviction of first degree murder).

[18]     *See* Trial Transcript, Vol. III at p. 534 (testimony of Dr. Chai Choi).

MR. BARNETT'S ALLEGATIONS CONCERNING THE
FAILURE TO INSTRUCT ON THE LESSER-INCLUDED
CRIMES OF SECOND DEGREE MURDER AND
MANSLAUGHTER IN THE SECOND DEGREE -
GROUNDS THREE AND FOUR

In his third and fourth grounds for relief, Mr. Barnett alleges error in the failure to

instruct the jury on the lesser-included offenses of second degree murder and second degree

manslaughter. Petitioner's Brief in Support at pp. 21-24.[19] The OCCA rejected these

claims,[20] and this decision entailed a reasonable application of Supreme Court precedent.

The Supreme Court has held that a trial court must instruct the jury in a capital case

on a lesser-included non-capital offense if the evidence would support such an instruction.

*See Beck v. Alabama*, 447 U.S. 625, 627 (1980). However, "[t]he *Beck* requirement is

satisfied so long as the jury had the option of at least one lesser included offense, even if

there are other lesser included offenses also supported by the evidence." *James v. Gibson*,

211 F.3d 543, 555 (10th Cir. 2000) (citing *Schad v. Arizona*, 501 U.S. 624, 645-46 (1991)).

The jury was instructed that it could find the Petitioner guilty of the lesser-included

offense of manslaughter in the first degree. *See* Criminal Appeal Original Record at pp. 473,

475-84, *State v. Barnett*, Case No. CF-2002-306 (Okla. Co. Dist. Ct. file-stamped Jan. 30,

2007) (Jury Instructions Nos. 28, 30-35). The resulting issue is whether the charge of first

---

[19] In both grounds, Mr. Barnett also challenges his trial attorney's failure to request these instructions. Petitioner's Brief in Support at pp. 21, 24. These allegations are addressed below. *See infra* pp. 34-35.

[20] OCCA Opinion on Direct Appeal at pp. 9-12.

degree manslaughter was supported by the evidence. *See Valdez v. Ward*, 219 F.3d 1222, 1242 (10th Cir. 2000).[21] If it was, the constitutional requirement would have been satisfied. *See supra* p. 17. If there was not sufficient evidence to support the lesser-included offense of first degree manslaughter, the constitutional requirement would not have been satisfied.[22]

Mr. Barnett asserts that the charge of first degree manslaughter was "'not well-supported by the evidence.'" Petitioner's Brief in Support at p. 22. However, he fails to present any explanation or support for this assertion. In the absence of explanation or support,[23] the Court faces an argument for instructions on two lesser-included offenses when

---

[21] There the circumstances were similar. Like Mr. Barnett, the habeas petitioner in *Valdez v. Ward*:

- had been convicted in Oklahoma on a charge of first degree murder,

- had obtained an instruction on first degree manslaughter, and

- had sought habeas relief based on the absence of an instruction on second degree murder.

*See Valdez v. Ward*, 219 F.3d at 1227, 1229, 1241-42. The Western District of Oklahoma held that the giving of a manslaughter instruction had taken the "case outside of the constitutional concerns at issue in *Beck*." *Id*. at 1242. The Tenth Circuit Court of Appeals rejected this rationale and explained that it had to "determine whether there was evidence in the record to support the first degree manslaughter instruction, the only lesser-included non-capital offense instruction given." *Id*. (citation omitted); *see also infra* note 22.

[22] *See Valdez v. Ward*, 219 F.3d at 1242 (holding that if the lesser-included instruction on first degree manslaughter had not been supported by the evidence, the *Beck* requirement would not have been met); *see also supra* note 21.

[23] *See Shrum v. State*, 991 P.2d 1032, 1037 (Okla. Crim. App. 1999) (holding that the evidence sufficed for an instruction on first degree manslaughter under Oklahoma law based on evidence that before the shooting, the shooter and victim had been engaged in a heated argument and physical altercation).

the jury had already been instructed on one lesser-included offense. In these circumstances, the federal district court should conclude that the constitution would have been satisfied even if the evidence would also have supported instructions on second degree murder or second degree manslaughter.[24] The federal district court should reject the habeas claim because the OCCA's holding was not contrary to, or an unreasonable application of, Supreme Court precedent.[25]

## MR. BARNETT'S CLAIMS INVOLVING PROSECUTORIAL MISCONDUCT - GROUND FIVE

The Petitioner alleges five instances of prosecutorial misconduct. According to the Petitioner, the prosecutor:

- misled the jury regarding the "intent" element during *voir dire*,

- commented on the Petitioner's silence,

- injected a personal opinion on Mr. Barnett's guilt,

- urged the jury to perform its civic duty, and

- attacked the defense's presentation of testimony from the Petitioner's family.

---

[24]    *See Welch v. Workman*, 607 F.3d 674, 688-89 (10th Cir. 2010) (rejecting a habeas claim under the AEDPA's deferential standard, holding that refusal to instruct the jury on second degree murder under Oklahoma law was not contrary to Supreme Court precedent in light of the jury instructions on first degree manslaughter); *James v. Gibson*, 211 F.3d 543, 555 (10th Cir. 2000) (rejecting the petitioner's claim involving a failure to instruct on second degree murder in a capital murder case, reasoning that the jury had been instructed on first degree manslaughter).

[25]    The OCCA rejected Mr. Barnett's claims on grounds that the evidence did not support the instructions for second degree murder or second degree manslaughter. OCCA Opinion on Direct Appeal at pp. 9-11. Although the OCCA's rationale was different, "neither the reasoning nor the result . . . contradict[ed] [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

*Id.* at pp. 25-27. On direct appeal, the OCCA rejected the claims. OCCA Opinion on Direct

Appeal at pp. 12-15. The federal district court should do the same.

## I. Claims Involving General Due Process

For example, the federal district court should reject the claims involving

misstatements of law, injection of personal opinion, exhortation to the jury to perform its

civic duty, and attack on the mitigation evidence.

### A. Standard for Habeas Relief on Claims Involving Prosecutorial Misconduct

These allegations do not involve specific constitutional rights. Nonetheless, the

Supreme Court has unambiguously acknowledged that the Fourteenth Amendment's Due

Process Clause entitles a defendant to fundamental fairness in the prosecutor's conduct at

trial.[26] Thus, the federal district court must determine whether the OCCA had acted

reasonably in its application of Supreme Court precedent. *See supra* pp. 6-7. Because of the

generality of the Supreme Court standard,[27] however, the federal district court should give

considerable "leeway" to the state courts in their determination of fundamental fairness.[28]

---

[26]     *See Johnson v. Mullin*, 505 F.3d 1128, 1159 (10th Cir. 2007); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial conduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)).

[27]     *See Alberni v. McDaniel*, 458 F.3d 860, 875 (9th Cir. 2006) (McKeown, J., concurring in part & dissenting in part) (stating that the standard of "fundamental fairness," "for the purposes of AEDPA's clearly established federal law requirement, is barely one step removed from the Constitution's recitation of due process itself").

[28]     *See Dagley v. Russo*, 540 F.3d 8, 18 (1st Cir. 2008) ("where the applicable rule is general in nature, such as the *Donnelly* fundamental unfairness standard [for consideration of a due process challenge to a prosecutor's closing argument], state courts have 'more leeway ... in reaching

### B. The Prosecutor's Comments Regarding the Element of "Intent" During *Voir Dire*

For his claim that the prosecutor misstated the law, Mr. Barnett relies on his general due process right to a fair trial. Petitioner's Brief in Support at p. 25. Under that theory, Mr. Barnett is not entitled to habeas relief.

As noted above, the present issue is whether the prosecutor's comments during *voir dire* rendered the trial fundamentally unfair. *See supra* p. 20. The OCCA did not squarely confront this issue. Instead, the court concluded that any error would have been "harmless." OCCA Opinion on Direct Appeal at pp. 12-13. In drawing this conclusion, the court stated that it does not "encourage" comments implying a difference between the terms "malice aforethought" and "premeditation." *Id.* at p. 12.

Because the OCCA did not expressly state whether the prosecutorial comments had deprived Mr. Barnett of due process, the federal district court can exercise its independent judgment on the issue. *See supra* p. 5. In doing so, the Court should conclude that the Petitioner has not shown denial of fundamental fairness by a preponderance of the evidence. *See id.* (discussing the burden to support habeas relief by a preponderance of the evidence).

In *voir dire*, the prosecutor commented three times on the difference between the legal term "malice" and the lay understanding of the term "premeditation."

---

outcomes in [their] case-by-case determinations'" (citation omitted)); *Nicklasson v. Roper*, 491 F.3d 830, 836 (8th Cir. 2007) (noting that "a wide range of latitude" is appropriate for the state courts, under the AEDPA, in light of the "indeterminate" nature of a "rule of decision" hinging on "the 'essential demands of fairness'" (citation omitted)); *see also supra* p. 7.

The prosecutor said to one venireperson:

> Ms. Lemke, as the judge said, this is a case – that judge referred to this as a case of first degree murder. Again, unlike TV, you know, you hear the terms like premeditated and stuff like that.
>
> . . . .
>
> That's not what this is. This is a crime that we call malice aforethought murder.

Trial Transcript, Vol. I at pp. 122-23.

The prosecutor told a second venireman:

> Mr. Rogers, as I said, the type of case this is, we talked about first degree murder and this is a case wherein it is a theory of malice aforethought. It's nothing like premeditated and so forth that you might see on TV. You might be going "What's the difference".
>
> And my point to you is that the judge will tell you what this type of murder case is, what the elements are that we have to prove. It is that law that Judge Bass gives you that you will have to follow.

*Id*. at p. 146.

The prosecutor told a third venireperson:

> The idea that we are here on, Ms. Roper – again, this defendant has been charged with two counts of murder. It's going to be malice aforethought murder. It's not what we call premeditated. Judge Bass is going to tell you what type of murder this is. We call it malice aforethought. He will explain that to you at the appropriate time. Your job is to listen to the evidence and see if he violated the law as we alleged.

*Id*. at pp. 173-74.

As discussed, the OCCA did not decide whether the three comments resulted in a denial of due process. Instead, the court stated that distinctions between "malice

22

aforethought" and "premeditation" are "not encouraged." OCCA Opinion on Direct Appeal at p. 12; *see supra* p. 21. However, the state court's disfavor would not translate into a denial of due process[29] and the federal court has little reason to question the fundamental fairness of the trial based on the prosecutor's comments.

In each of the excerpts involved, the prosecutor was simply distinguishing between the legal term "malice aforethought" and the lay understanding of the term "premeditation." *See supra* pp. 21-22. The distinction has been frequently recognized elsewhere.[30] The OCCA has acknowledged the difference between "malice aforethought" and "premeditation," but noted that it has used the terms interchangeably.[31] Presumably the court uses the terms interchangeably because the Oklahoma legislature has defined the term "premeditation" in a manner that eliminates the element of advance planning.[32] Regardless

---

[29]     *See Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998) (holding that the prosecutor's comments, even though not "condoned," did not deprive the habeas petitioner of due process); *see also Wilson v. Sirmons*, 536 F.3d 1064, 1121 (10th Cir. 2008) (stating that even though the prosecutor's remarks "were improper," they did not deprive the habeas petitioner of a fundamentally fair trial), *reinstated*, 577 F.3d 1284 (10th Cir. 2009) (*en banc*).

[30]     *See State v. Patton*, 102 P.3d 1195, 1200 (Kan. Ct. App. 2004) (stating that "[t]he commonly understood definition of 'premeditation' . . . requires a party to form the design or intent to kill in advance"); *Godwin v. State*, 382 A.2d 596, 607 (Md. Ct. App. 1977) ("A layman's understanding of 'premeditation' would be something that requires an appreciable length of time . . . ."), *vacated on other grounds*, 403 A.2d 785 (Md. 1978).

[31]     On direct appeal, the OCCA cited *Selsor v. State*, 2 P.3d 344 (Okla. Crim. App. 2000). OCCA Opinion on Direct Appeal at p. 12. In *Selsor*, the OCCA stated: "While it appears that the 'premeditated design' and 'malice aforethought' elements differ, this Court has concluded they are interchangeable." *Selsor v. State*, 2 P.3d at 350 n.16 (citing *Conover v. State*, 933 P.2d 904, 910 (Okla. Crim. App. 1997)).

[32]     *See* Okla. Stat. tit. 21 § 703 (2001) ("Premeditation: A design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into

of the reason for the OCCA's view, however, the issue for due process review is simply

whether the prosecutor's comments prevented fundamental fairness in the trial. *See id.* pp.

20-21. The prosecutor's three comments did not do so, as they merely focused the jury on

the fact that malice aforethought does not require advance planning.

The Western District of Oklahoma addressed a virtually identical issue in *Jones v.*

*State*, 567 F. Supp. 2d 1309 (W.D. Okla. 2008). There a habeas petitioner faced a charge of

first degree murder in Oklahoma and the prosecutor commented in *voir dire* about the

difference between "malice aforethought" and the natural connotation of the term

"premeditation." *See Jones v. State*, 567 F. Supp. 2d at 1309, 1321. The OCCA concluded

that the prosecutor's remarks did not constitute error, and the Western District of Oklahoma

rejected the related habeas claim. *Id.* The federal district court explained:

> The OCCA's determination constituted a reasonable application of
> federal law. The State had the burden to prove an intent to kill. This element
> does not require advance planning, which inheres in the lay understanding of
> "premeditation." Thus, the prosecutor's comments were accurate, and Mr.
> Jones cannot show infection of "the trial with unfairness as to make the
> resulting conviction a denial of due process."

*Id.* (footnotes omitted).

The present circumstances are virtually identical to those in *Jones v. State*, and the

federal district court should follow its prior decision. The prosecutors here and in *Jones*

contrasted the meaning of the legal term "malice aforethought" with the common

understanding of the term "premeditated." The OCCA does view the terms "malice" and

---

execution."); *see also supra* pp. 12-13 & note 14.

"premeditated" as interchangeable, but the state's definition of "premeditation" does not include the element of advance planning. *See supra* pp. 12-13 & note 14. In light of this aspect of the state's definition, the prosecutors here and in *Jones* attempted to explain the fact that one can harbor "malice aforethought" without advance planning. This explanation was accurate under Oklahoma law and did not render the trial in *Jones* or the present case fundamentally unfair. Thus, the federal district court should reject the prosecutorial misconduct claim, just as it had done in *Jones v. State*.

C. <u>The Prosecutor's Alleged Expression of a Personal Opinion of Guilt</u>

Mr. Barnett also alleges that the prosecutor had expressed a personal opinion on guilt. Petitioner's Brief in Support at p. 26. The Petitioner does not identify a particular statement. Instead, he simply cites pages 789-99, 810-11, and 813 of the trial transcript. *Id.* Those pages do not reflect any obvious expressions of personal opinion. *See* Trial Transcript, Vol. V at pp. 789-99, 810-11, 813. Without further information, the Court cannot conduct any meaningful review over the Petitioner's assertion.[33]

D. <u>The Prosecutor's Alleged Exhortation to the Jury to Perform Its "Civic Duty"</u>

The Petitioner further complains about the prosecutor's exhortation to the jury to perform its "civic duty." Petitioner's Brief in Support at pp. 26-27. The OCCA rejected the

---

[33]     *See Daniel v. Wyoming Department of Corrections State Penitentiary Warden*, 208 F.3d 225, 2000 WL 216616, Westlaw op. at 1 (10th Cir. Feb. 23, 2000) (unpublished op.) ("The allegation of prosecutorial misconduct lacks specificity, and therefore amounts to a conclusory argument that cannot suffice to demonstrate a violation of [the petitioner's] constitutional right to a fair trial."); *see also Humphreys v. Gibson*, 261 F.3d 1016, 1023 n.2 (10th Cir. 2001) (rejecting habeas allegations because they were "conclusory" (citation omitted)).

claim. OCCA Opinion on Direct Appeal at p. 14. This decision constituted a reasonable determination based on the evidence and Supreme Court precedent.

After the jury had already found Mr. Barnett guilty of first degree murder,[34] the prosecutor advocated a harsh sentence and stated:

> Don't feel guilty. You are doing your civic duty whatever it is. Say it's a horrible thing. Of course, it is. Tells you he will be an old man if you give him a sentence of less than death. Like I said, Beverly Meadows is always going to be 33. He wants to talk about holidays and so forth. Don't leave the victims out of your thoughts. You decide. The judge has instructed you on that.

Trial Transcript, Vol. V at p. 815. The defense attorney objected,[35] the judge told the prosecutor to "move forward,"[36] and the prosecutor complied by moving to a new subject.[37]

The OCCA's rejection of the claim was not contrary to, or an unreasonable application of, Supreme Court precedent. The prosecutor was not suggesting a civic duty to convict,[38] as the jury had already found Mr. Barnett guilty of first degree murder.[39] Instead, the prosecutor suggested to the jury that it should perform its civic duty, "whatever it is," in

---

[34]     Trial Transcript, Vol. IV at pp. 724-25.

[35]     Trial Transcript, Vol. V at p. 815.

[36]     Trial Transcript, Vol. V at p. 815.

[37]     Trial Transcript, Vol. V at pp. 815-16.

[38]     The Tenth Circuit Court of Appeals has frequently held that a prosecutor cannot suggest to the jury that it has a civic duty to convict. *Wilson v. Sirmons*, 536 F.3d 1064, 1121-22 (10th Cir. 2008), *reinstated*, 577 F.3d 1284 (10th Cir. 2009) (*en banc*); *Bland v. Sirmons*, 459 F.3d 999, 1027 (10th Cir. 2006); *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005).

[39]     *See supra* p. 26.

an apparent argument for severity in the sentence.  *Id.*; *see supra* p. 26.  The judge told the prosecutor to "move forward," and he quickly did so.[40]  The jury ultimately declined to impose the maximum sentence for either death.[41]  In these circumstances, the OCCA's rejection of the claim did not conflict with, or unreasonably apply, Supreme Court precedent.[42]

E.      The Prosecutor's Alleged Attack on the Petitioner's Mitigating Evidence

The prosecutor argued at the punishment phase of the trial:

> He puts on his family.  I submit to you how low is that?  I'm using my family as a shield.  These are good people.  . . . .  On behalf of the state I submit shame on you, trying to put your family up as a shield.  Save his life because of his family.

Trial Transcript, Vol. V at pp. 811-12.  According to the Petitioner, the prosecutor's argument included "an unfair and highly prejudicial attack" on this evidence.  Petitioner's Brief in Support at p. 27.  The OCCA rejected this claim, finding the State's statements to be "within [the] bounds of closing argument."  OCCA Opinion on Direct Appeal at p. 15.

---

[40]      *See supra* p. 26; *see also United States v. Pena*, 930 F.2d 1486, 1491 (10th Cir. 1991) (holding that a prosecutor's remarks were improper, but did not require reversal in part because the judge told the prosecutor "to move on to something else in his argument, and the prosecutor complied" (citation omitted)).

[41]      As discussed below, the maximum penalty for first degree murder is the death penalty.  *See infra* p. 31.  Mr. Barnett did not obtain this sentence on either count.  *See supra* p. 3.

[42]      *See Le v. Mullin*, 311 F.3d 1002, 1022 (10th Cir. 2002) (holding that the OCCA had reasonably applied federal law when it held that the prosecutor did not render the trial fundamentally unfair when he argued that the jury "'[could] only do justice . . . by bringing in a verdict of death'").

This holding constituted a reasonable determination based on the evidence and Supreme Court precedent.

Mr. Barnett was entitled to present mitigating evidence in the second stage of his capital trial, and the prosecutor was entitled to comment on it and the weight that it should be given. *See Neill v. Gibson*, 278 F.3d 1044, 1058 (10th Cir. 2001). The OCCA acted reasonably when it treated the prosecutor's argument as a comment on the weight of Mr. Barnett's evidence in the penalty phase.

## II. The Prosecutor's Alleged Comment on Mr. Barnett's Silence

Mr. Barnett also complains that the prosecutor had commented on exercise of the right to remain silent. Petitioner's Brief in Support at p. 26. The OCCA rejected the claim, reasoning that the prosecutor was commenting on Mr. Barnett's flight from the scene and that this evidence was relevant to show consciousness of guilt. OCCA Opinion on Direct Appeal at pp. 13-14. This conclusion involved a reasonable determination based on the evidence and Supreme Court precedent.

The Petitioner quotes part of the prosecutor's remarks:

God forbid if you had to kill somebody, if it was an accident, what do you do? You call the police and say hey, listen, everybody that will listen to you, you call the news media, it was me or it was him, this is what happened. It was an accident.

Petitioner's Brief in Support at p. 26 (quoting Trial Transcript, Vol. IV at p. 689). The entirety of the comment was:

And they want you to believe it's impossible to kill because of PCP.

. . . .

Defendant said he doesn't remember. "I don't remember". Now he's trying to tell you that. He's trying to get you to believe that hey, you know, I'm just not thinking, I don't remember.

His actions belie that. You know what the main one was? He knows to run away. There are two people dead. He doesn't stay as if you were so stoned out of your mind that you wouldn't know what you're doing. When the police come you would say "look at the pretty butterflies". No. They run. They know they have done wrong. All of them. He does, too.

And that's why - - did you stay and say hey, I don't know what happened, I was smoking dope, I was drinking, I don't know what happened. No. He runs. And that right there is enough to tell you he's thinking. He knows what he's done. He runs.

God forbid if you had to kill somebody, if it was an accident, what do you do? You call the police and say hey, listen, everybody that will listen to you, you call the news media, it was me or it was him, this is what happened. It was an accident. No. He runs. He runs. He runs because he's thinking, because he knows and that's why when he comes in this morning he tries to tell you, Gee, I don't know.

Trial Transcript, Vol. IV at pp. 687-89.

In context, the discussion involved a reasonable effort to rebut the Petitioner's theory that his intoxication had prevented formation of the required intent. As a result, the OCCA's rejection of the claim involved a reasonable determination based on the evidence and Supreme Court precedent.[43]

---

[43]     *See*, *e.g.*, *Hamilton v. Mullin*, 436 F.3d 1181, 1188 (10th Cir. 2006) (holding that the OCCA did not unreasonably decide the prosecutorial misconduct issue, in part because the prosecutor's statement about the defendant's flight did not impermissibly address exercise the his right to remain silent).

III.    <u>Summary</u>

On the claims involving prosecutorial misconduct, the Petitioner has not demonstrated a lack of fundamental fairness or violation of a specific constitutional right.  These claims should be rejected.

THE PETITIONER'S ALLEGATION CONCERNING
THE EXCESSIVENESS OF THE SENTENCE OF LIFE
WITHOUT THE POSSIBILITY OF PAROLE - GROUND SIX

In ground six, Mr. Barnett alleges undue severity in the sentence of life without the possibility of parole for the murder of Beverly Meadows.  Petitioners' Brief in Support at p. 28.  The OCCA disagreed, finding that the Petitioner's sentence was within the statutory range and did not "shock the conscience of the [c]ourt."  OCCA Opinion on Direct Appeal at pp. 15-16.  That finding was reasonable based on the evidence and Supreme Court precedent.

The Eighth Amendment provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. Amend. VIII.  "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"  *Graham v. Florida*, __ U.S. __, 130 S. Ct. 2011, 2021 (2010) (citing *Weems v. United States*, 217 U.S. 349, 367 (1910)).  However, "the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and

sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* (citation omitted).

To determine if a sentence is "grossly disproportionate," the Court must compare the gravity of the offense and the severity of the sentence. *Id.* "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (citation omitted). On rare occasions, however, the crime and the sentence are grossly disproportionate to one another. *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006). In these extraordinary circumstances, the sentence will be considered unconstitutional. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional violation for only the extraordinary case.").

The evidence establishes that after killing Stanley Johnson, Mr. Barnett exited the house to retrieve a second gun. *See supra* pp. 3, 14. He then shot Beverly Meadows multiple times, finally killing her with a bullet to the back of her head. *See id.* p. 3.

After finding the Petitioner guilty of first degree murder, the jury had three sentencing alternatives: life with the possibility of parole, life without the possibility of parole, and death. *See* Okla. Stat. tit. 21 § 701.9(A) (2005 supp.). The jury declined to give the Petitioner the death penalty, sentencing Mr. Barnett instead to life imprisonment without the possibility of parole. *See supra* p. 3. When weighing the gravity of Mr. Barnett's crime with

the sentence, the federal district court should regard the OCCA's conclusion as reasonable under the evidence and Supreme Court precedent.[44]

## MR. BARNETT'S ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF COUNSEL - GROUNDS THREE, FOUR, AND SEVEN

In grounds three and four, the Petitioner alleges in part that his trial attorney was ineffective for failure to request lesser-included instructions on the charges of second degree murder and second degree manslaughter. Petitioner's Brief in Support at pp. 22, 24. The OCCA rejected these claims on the merits,[45] and that disposition was reasonable under the evidence and Supreme Court precedent.

In ground seven, Mr. Barnett argues that both trial and appellate counsel were ineffective for failure to adequately investigate and utilize Sherry Ellis' potential testimony. *Id.* at pp. 29-33. The Court should grant an evidentiary hearing on the claim involving trial counsel and defer consideration of the claim involving appellate counsel.

---

[44]     *See Jones v. State*, 567 F. Supp. 2d 1309, 1325-26 (W.D. Okla. 2008) (concluding that the OCCA had reasonably held that a sentence of life imprisonment without the possibility of parole was not excessive for the crime of first degree murder); *Fabela v. Ward*, Case No. CIV-05-799-L, slip op. at 1, 24-26 (W.D. Okla. Jan. 30, 2006) (unpublished report and recommendation by magistrate judge, rejecting a habeas claim based on the severity of a life sentence, without eligibility for parole, for first degree murder), *adopted* (W.D. Okla. Mar. 15, 2006) (unpublished order by district judge), *appeal dismissed*, 196 Fed. Appx. 644, 645, 647 (10th Cir. Aug. 22, 2006) (unpublished op.) (dismissing the appeal for substantially the same reasons set forth by the district court).

[45]     OCCA Opinion on Direct Appeal at pp. 9-12.

I.    Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington,* the Supreme Court has held that on a claim involving ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court's decision in *Strickland* constitutes "clearly established" federal law for purposes of the AEDPA.[46] But application of the AEDPA's deferential standard is affected by the relative specificity of the Supreme Court's standard. *See supra* p. 7. The *Strickland* standard is expressed in general terms, resulting in latitude for the manner in which the OCCA had analyzed Mr. Barnett's claim of ineffective assistance. As the Supreme Court recently stated:

> And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

> Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, [the habeas petitioner's] ineffective-assistance claim fails.

*Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009) (citations omitted).

---

[46]    *See Hooper v. Mullin*, 314 F.3d 1162, 1170 n.3 (10th Cir. 2002) (stating that for purposes of the deferential AEDPA standard in habeas actions, "*Strickland*'s objectively reasonable standard is the clearly established Supreme Court precedent for ineffective assistance claims"); *see also Williams v. Taylor*, 529 U.S. 362, 391 (2000) ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'").

II.     Trial Counsel's Failure to Request Instructions on the Lesser-Included Crimes of
        Second Degree Murder and Second Degree Manslaughter

Mr. Barnett complains that his attorney had failed to seek instructions on the lesser-included crimes of: (1) second degree murder for the two deaths, and (2) second degree manslaughter for the death of Stanley Johnson. Petitioner's Brief in Support at pp. 22-24. The state appellate court rejected the ineffective assistance claims on grounds that:

- insufficient evidence existed for an instruction on second degree murder for either death or for second degree manslaughter in the death of Mr. Johnson and, as a result,

- the trial court would have declined to give these instructions even if requested.

OCCA Opinion on Direct Appeal at pp. 10-12; *see supra* p. 32. The federal district court should regard the OCCA's decision as reasonable under the evidence and Supreme Court precedent.

Even if counsel had been neglectful in failing to ask for the instructions, the Petitioner would have to show prejudice. *See supra* p. 33. For this element, Mr. Barnett could only establish prejudice if the trial court would have been likely to grant defense counsel's request for an instruction on second degree murder or second degree manslaughter. Before the trial court would have done so, however, it would have had to conclude that there was sufficient evidence for one or both of these offenses. *See Ledbetter v. State,* 933 P.2d 880, 888 (Okla. Crim. App. 1997). The OCCA, which is the state's only appellate court in criminal cases,[47] concluded that the evidence was insufficient for an instruction on second degree murder or

---

[47]     *See* Okla. Const. Art. 7 § 4; Okla. Stat. tit. 20 § 40 (2001).

second degree manslaughter.[48]  The Petitioner has provided no reason to expect a different decision by the trial judge.[49]  As a result, the federal district court cannot regard the alleged deficiency as prejudicial.

III.   Trial and Appellate Counsel's Failure to Investigate Potential Testimony by Sherry Ellis

At trial, the Petitioner invoked a defense of voluntary intoxication rather than deny that he had shot Mr. Johnson or Ms. Meadows.  Trial Transcript, Vol. IV at pp. 695-702 (closing argument on behalf of Mr. Barnett); *see supra* p. 13.  The Petitioner alleges that his trial and appellate attorneys were ineffective for failure to utilize potential testimony by Sherry Ellis.  *See supra* p. 32.[50]  The Petitioner also seeks an evidentiary hearing on this issue.  Petitioner's Brief in Support at p. 33.

The Court should grant the request for an evidentiary hearing on the claim involving ineffectiveness on the part of trial counsel.  The related claim involving appellate counsel should be deferred.

---

[48]   *See supra* p. 34.

[49]   *See Bilderback v. Abbott*, 107 Fed. Appx. 852, 855 (10th Cir. Aug. 17, 2004) (unpublished op.) (holding that a habeas petitioner could not show ineffective assistance of counsel for failure to request a voluntary manslaughter instruction because the state supreme court had concluded under state law that the evidence did not support the instruction).

[50]   The Petitioner also alleges that the appellate attorney had failed to call Ms. Ellis as a witness and to cross-examine her when she was called.  Petitioner's Brief in Support at pp. 29-30.  But witnesses are called at trial by trial lawyers rather than appellate attorneys.  The Petitioner presumably meant to allege ineffectiveness by appellate counsel for the failure to assert ineffectiveness by trial counsel.  However, the Petitioner has not presented the claim in this manner.

A.    <u>Ineffective Assistance of Trial Counsel</u>

The Court should entertain an evidentiary hearing on the claim involving trial counsel's ineffectiveness.

<u>Procedural Default</u>

The Respondent argues that the claim involving trial counsel is procedurally barred. Response to Petition for Writ of Habeas Corpus at pp. 41-45 (June 7, 2010). According to the Respondent, the claim should have been raised on direct appeal. *Id.* at p. 42. This argument is invalid as a matter of law.

The procedural irregularity could prevent habeas relief if the defect is considered "adequate." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The failure to raise the claim on direct appeal can be considered "adequate" only if:

- the trial and appellate attorneys were different and

- the ineffectiveness claim could be resolved on the trial record alone.[51]

---

[51]    The Tenth Circuit Court of Appeals has elsewhere stated that even when the claim cannot be resolved on the basis of the trial record, the habeas claim can be considered procedurally barred when the state provides an adequate procedure for supplementation of the record. *See, e.g.*, *DeLozier v. Sirmons*, 531 F.3d 1306, 1330 (10th Cir. 2008). In Oklahoma, the pertinent rules provide:

When an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial, and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of Appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel. The proposition of error relating to ineffective assistance of trial counsel can be predicated on either allegations arising from the record or outside the record

*See Welch v. Workman*, 607 F.3d 674, 704 (10th Cir. 2010).[52]

The first element applies because Mr. Barnett had different attorneys at trial and on appeal. *See* Petition at p. 14 (identifying the trial attorney as Irven Box and the appellate attorney as S. Gail Gunning).

The second element applies because the Court cannot resolve the ineffectiveness claim from the trial record alone. The trial record did not disclose:

- whether trial counsel had interviewed Ms. Ellis and, if so, what she had said and

- whether trial counsel had legitimate strategic considerations behind his decision not to use Ms. Ellis as a witness.

---

or a combination thereof.

Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals (citation omitted). However, the Respondent has not based the argument for this procedural default on the ability to supplement the appellate record. *See Fairchild v. Workman*, 579 F.3d 1134, 1144 n.4 (10th Cir. 2009) (declining to base a procedural default on the failure to utilize Rule 3.11 when "the State ha[d] not offered any meaningful arguments to establish the adequacy and evenhandedness of Rule 3.11's application"); *see also* Response to Petition for Writ of Habeas Corpus at p. 45 (June 7, 2010) ("The issues raised involved a reading of the record and could have been raised by appellate counsel.").

[52]     The *Welch* court stated:

> The Oklahoma requirement that a claim of ineffective assistance of trial counsel be raised on direct appeal is an adequate ground for procedural default if (1) the defendant's counsel on direct appeal is different from trial counsel and (2) the claims can be resolved on the trial record alone.

*Welch v. Workman*, 607 F.3d at 704 (citation omitted).

As a result, the claim involving trial counsel cannot be resolved on the trial record alone.[53] In these circumstances, the Oklahoma procedural rule is not considered "adequate" for purposes of procedural default.

<u>Evidentiary Hearing</u>

The resulting issue is whether to allow an evidentiary hearing on the claim involving ineffectiveness of trial counsel. The Court should answer in the affirmative.

The AEDPA restricts the availability of evidentiary hearings when the petitioner fails to develop the factual basis of the claim in state court. AEDPA, 28 U.S.C. § 2254(e)(2) (2006). On the ineffectiveness claim, Mr. Barnett requested an evidentiary hearing in state district court. Application for Post-Conviction Relief at pp. 9-10, 12-13. This request constituted an appropriate effort to develop the factual basis of the claim. *See* Okla. Stat. tit.

---

[53]     The Respondent argues:

> The issues raised involved a reading of the record and could have been raised by appellate counsel. In fact, the defendant concedes that the material at issue was provided to trial counsel during pre-trial discovery. Therefore, pursuant to the holding in *English*, the issues were properly barred by the [OCCA] and that bar should be respected by this Court.

Response to Petition for Writ of Habeas Corpus at p. 45 (June 7, 2010). This argument is misguided. As discussed in the text, the issue is whether the ineffectiveness claim could be determined based on the trial record rather than the information available in pretrial discovery. *See supra* text accompanying note. The police report containing Sherry Ellis' statement was not part of the trial record, and the trial record did not contain any information about an investigation into her potential testimony.

22 § 1084 (2001).[54]  As a result, the statutory restriction on evidentiary hearings does not apply.[55]

In the absence of the statutory restriction, the Petitioner is entitled an evidentiary hearing if proof of the allegations would justify habeas relief.[56]

The Petitioner has alleged a senseless failure to investigate Sherry Ellis' statement to the police.  Mr. Barnett points to four potentially favorable aspects of Ms. Ellis' report.

First, the report arguably indicates that Ms. Ellis had identified a third-party, rather than Mr. Barnett, as the person fighting with Stanley Johnson.  Application for Post-Conviction Relief, Exhibit 3 at p. 2.  The Petitioner regards the content as helpful because the evidence indicated that the person tussling with Mr. Johnson was the person who had shot him.

---

[54]     This statute provides in part:

> If the [post-conviction] application cannot be disposed of on the pleadings and record, or there exists a material issue of fact, the court shall conduct an evidentiary hearing at which time a record shall be made and preserved.  The court may receive proof by affidavits, depositions, oral testimony, or other evidence and may order the applicant brought before it for the hearing.

Okla. Stat. tit. 22 § 1084 (2001).

[55]     *See Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006) (holding that the AEDPA restriction on evidentiary hearings did not apply because the petitioner had sought an evidentiary hearing with his post-conviction application and presented some evidence to the Oklahoma district court).

[56]     *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." (citation omitted)).

Second, according to the report, Ms. Ellis saw Lincoln Edmundson with a small silver gun. *Id.*, Exhibit 3 at p. 1. According to the Petitioner, this information is beneficial because the .22 gun used to shoot Mr. Johnson would have matched the description of a small silver gun. *See infra* p. 43.

Third, the report states that Ms. Ellis had "heard" that Mr. Johnson was killed because he had witnessed another murder. Application for Post-Conviction Relief, Exhibit 3 at p. 2. This statement might have led to admissible testimony tying someone other than Mr. Barnett to the killings.

Nonetheless, many possible explanations could exist for a strategic decision to avoid questioning of Ms. Ellis about the identity of the person wrestling with Mr. Johnson.

First, one might have doubted whether Ms. Ellis could actually have identified anyone as the person tussling with Mr. Johnson. Indeed, at the trial, Ms. Ellis testified that she did not know who was tussling with Mr. Johnson.[57]

---

[57]     The exchange was:

Q.     There was a lot of commotion. What was going on?

A.     Tussling, I guess. Tussling. Something.

Q.     Do you know who was tussling?

A.     Huh-uh.

THE COURT:          Is that a yes or a no?

MS. ELLIS:          No.

Trial Transcript, Vol. II at p. 465.

Second, some of the witnesses identified Mr. Barnett as the man "tussling" with Mr. Johnson. *See supra* p. 2; *see also* Trial Transcript, Vol. III at pp. 485, 568, 570. Ms. Ellis' testimony might have appeared questionable in light of other witnesses' identification of Mr. Barnett as the person fighting with Mr. Johnson.

Third, no one else at the house had mentioned the third-party, Doyle Watkins. Ms. Ellis' testimony might have appeared questionable in light of the other accounts.

Fourth, Ms. Ellis stated that Lincoln Edmundson was outside with the small silver gun. *See* Application for Post-Conviction Relief, Exhibit 3 at p. 2. If the gun was outside with Mr. Edmundson, Doyle Watkins presumably could not have used it inside the house during the "tussle" with Mr. Johnson. Thus, Ms. Ellis' testimony might have suggested an internal inconsistency within her account.

Reliance on Ms. Ellis' police statement might have appeared dubious to defense counsel. Even if Ms. Ellis' statement were viewed favorably, however, the attorney presumably would have had to weigh the pros and cons of a change in strategy. One possible disadvantage would have involved the potential inability to obtain instruction on lesser-included offenses.[58]

---

[58] *See Gilson v. State*, 8 P.3d 883, 918 (Okla. Crim. App. 2000) ("this Court has held that a defendant is not entitled to instructions on any lesser included offense when he defends against the charge by proclaiming his innocence" (citations omitted)); *Hooker v. State*, 887 P.2d 1351, 1361 (Okla. Crim. App. 1994) ("Where the defendant claims he is innocent of any crime, he is not entitled to lesser-included offense instructions." (footnote omitted)).

At the same time, one might have had valid reasons to question Sherry Ellis at trial about her belief that Mr. Barnett was not the person fighting with Mr. Johnson.

As the Respondent notes, no one else at the house had identified Doyle Watkins as someone who was present. *See supra* p. 41. But Jerry Leslie knew only a few of the individuals there;[59] and Lincoln Edmundson, Levell McBroom, and Andre Hutson were not asked at trial to identify everyone present at the house.[60]

The Respondent also points out that some of the occupants had identified the person tussling with Mr. Johnson as Mr. Barnett. At trial, the only witnesses to identify the person as Mr. Barnett were Lincoln Edmundson and Levell McBroom.[61] The credibility of both men was subject to question because they were admittedly under the influence of drugs. *See* Trial Transcript, Vol. II at p. 424 (Lincoln Edmundson's testimony that he had alcohol or drugs in his system); Trial Transcript, Vol. III at p. 482 (Levell McBroom's testimony that he "[p]robably" had alcohol in his system).[62]

---

[59]     *See* Trial Transcript, Vol. II at p. 388.

[60]     Lincoln Edmundson testified that Levell McBroom and Andre Hutson were also at the house. Trial Transcript, Vol. II at pp. 432-33. But Mr. Edmundson was not asked to name everyone at the house.

[61]     Trial Transcript, Vol. II at pp. 428-29 (Lincoln Edmundson's testimony); Trial Transcript, Vol. III at pp. 486-87 (Levell McBroom's testimony); *see also supra* pp. 2, 41.

[62]     In a prior interview, Mr. Andre Hutson had identified Mr. Barnett as the person wrestling with Mr. Johnson. Trial Transcript, State's Exhibit 45. Nonetheless, Mr. Hutson admitted that on the day of the killings, he was under the influence of PCP, Valium, and alcohol. Trial Transcript, Vol. III at p. 576.

The police report also indicates that Ms. Ellis had said that Lincoln Edmundson possessed a small silver gun. *See supra* p. 40. Mr. Barnett believes this statement is significant because the gun could have been the .22 caliber handgun used to kill Mr. Johnson. *See id.* p. 3. The parties disagree about the significance of the testimony. The Respondent suggests that the statement is immaterial because Mr. Edmundson was a drug dealer and presumably had a handgun for use in his illicit business. Response to Petition for Writ of Habeas Corpus at p. 55 (June 7, 2010). The Petitioner regards the statement as significant because the silver gun could have been the .22 used to kill Mr. Johnson. Petitioner's Brief in Support at pp. 31-32; *see supra* p. 40.

Finally, the police report refers to an unspecified remark that Mr. Johnson was shot because he had seen another murder. *See supra* p. 40. The remark would likely have constituted inadmissible hearsay. *See* Okla. Stat. tit. 12 § 2801(A)(3), 2802 (2001). The remaining question is whether investigation could have led to admissible testimony linking someone other than Mr. Barnett to the shooting of Mr. Johnson. On that question, the habeas record provides little help.

The Petitioner alleges that his trial counsel had made imprudent tactical decisions based on a failure to adequately investigate Sherry Ellis' potential testimony. The Respondent disagrees, arguing that the trial attorney had many good reasons available for handling the defense the way he did. The competing arguments stem from a shared limitation, the absence of any information about the scope of the defense attorney's

investigation. "A court cannot reliably determine whether counsel's investigation was deficient without knowing what was investigated, and the scope of the investigation can rarely be discerned from the trial record." *Fairchild v. Workman*, 579 F.3d 1134, 1142 (10th Cir. 2009).[63]  Here no information exists about what the defense attorney did or did not do to investigate Sherry Ellis' written report.  Thus, the Court should conduct an evidentiary hearing to determine: (1) the scope of the attorney's investigation; (2) why he declined to elicit the testimony desired by Mr. Barnett; and (3) the potential for a different outcome if trial counsel had further investigated Sherry Ellis' statement.[64]

---

[63]     In *Fairchild v. Workman*, the issue on habeas review was whether trial counsel had failed to investigate and present potentially mitigating evidence.  *See Fairchild v. Workman*, 579 F.3d at 1142.  The Tenth Circuit Court of Appeals concluded that this issue will "usually . . . require an evidentiary hearing" because of the need to know the scope of the investigation and the impossibility of evaluating this area based on the trial record alone.  *Id.*

[64]     The Tenth Circuit Court of Appeals addressed a similar issue in *United States v. Holder*, 410 F.3d 651 (10th Cir. 2005).  That case involved a conviction for a shooting and the ineffectiveness claim involved the failure to call a person who had seen the incident.  *See United States v. Holder*, 410 F.3d at 655.  The district court rejected the claim based on the attorney's discretion whether to call particular witnesses.  *See id.*  The Tenth Circuit Court of Appeals held that the trial court could not appraise the reasonableness of trial counsel's decision without an evidentiary hearing.  *Id.* at 656.  The court explained:

> Our record offers no explanation for counsel's decision not to call [the witness].  There may have been sound, tactical reasons not revealed by the record.  But on this record we cannot rule out other possibilities, such as that there may have been no reason at all but instead a failure to investigate which left counsel unfamiliar with [the witness's] version of the events, or a failure to secure [the person's] appearance at trial.  Such a crucial decision must be explained before a court can draw any conclusions on the ineffectiveness claim.

*Id.*

B.      Ineffective Assistance of Appellate Counsel

In part, Mr. Barnett alleges that his appellate counsel should have investigated Ms. Ellis' potential testimony. *See supra* p. 32. The Court should defer consideration of this claim because it could be rendered moot whatever the ruling is on the related claim involving trial counsel. If trial counsel was not ineffective for failure to look into Ms. Ellis' potential testimony, appellate counsel presumably could not be considered ineffective for failure to undertake the same investigation. And if Mr. Barnett demonstrates ineffectiveness at the trial level, he presumably would be entitled to habeas relief regardless of whether he can also establish ineffectiveness on the part of his appellate counsel. In these circumstances, the Court should defer consideration of the claim that appellate counsel was ineffective through a failure to investigate Sherry Ellis' potential testimony.

THE PETITIONER'S ALLEGATION OF
CUMULATIVE ERROR - GROUND EIGHT

In his eighth ground for relief, Mr. Barnett alleges denial of a fair trial based on the combination of trial counsel's poor strategic decision, "instructional errors," and "prosecutorial misconduct." Petitioner's Brief in Support at p. 34. The federal district court should defer consideration of this claim.

Multiple errors can impinge upon the fundamental fairness of the trial and result in a deprivation of due process. *See Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003) (citations omitted).

As noted above, the Court should defer consideration of the claim involving ineffectiveness at trial until completion of an evidentiary hearing. *See supra* pp. 36-44. There is no way to know at this stage whether the claim will be considered valid or invalid.

The undersigned has also recommended rejection of the claims involving prosecutorial misconduct. *See id.* pp. 19-30. However, the "substantive prejudice component[]" of a prosecutorial misconduct claim "essentially duplicate[s] the function of harmless-error review." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003). As a result, the Petitioner could conceivably be entitled to cumulate prosecutorial misconduct with ineffective assistance if he prevails on the latter. *See id.* (stating that prosecutorial misconduct claims "should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice"). In light of this possibility, the Court should defer consideration of the claim involving cumulative error.

## RECOMMENDED RULINGS

The Court should grant an evidentiary hearing on the claim involving ineffective assistance of trial counsel relating to the alleged failure to investigate Sherry Ellis' statement. Consideration should be deferred on: (1) the related claim involving ineffectiveness by appellate counsel, and (2) cumulative error. All of the other habeas claims should be denied.

## NOTICE OF THE RIGHT TO OBJECT

The Petitioner can object to this report and recommendation. To do so, Mr. Barnett must file an objection with the Clerk of this Court by November 1, 2010. *See* Fed. R. Civ.

P. 6(a)(1)(C), 6(d), 72(b)(2); 28 U.S.C.A. § 636(b)(1) (2010 supp.).  The failure to timely object would foreclose appellate review of the suggested rulings.[65]

STATUS OF THE REFERRAL

The referral is discharged.

Entered this 13th day of October, 2010.

_____
Robert E. Bacharach
United States Magistrate Judge

---

[65]     *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").