IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARK ANTHONY BARNETT,           )
                                )
              Petitioner,       )
                                )
v.                              )        Case No. CIV-10-153-D
                                )
ERIC FRANKLIN, Warden,          )
                                )
              Respondent.       )

**O R D E R**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 17]

issued by United States Magistrate Judge Robert E. Bacharach pursuant to 28 U.S.C. § 636(b)(1)(B)

and (C).  Judge Bacharach recommends denial of the Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus on all claims except one alleging ineffective assistance of trial and appellate counsel

in failing to utilize or investigate the pretrial statement of a trial witness, Sherry Ellis.  On this claim,

Judge Bacharach finds that an evidentiary hearing is needed and that consideration should be

deferred pending the completion of the hearing.

Respondent has filed a timely, specific objection to the portion of the Report recommending

an evidentiary hearing on Petitioner's claim of ineffective assistance of trial counsel based on

Ms. Ellis' statement.  Respondent argues that Petitioner's allegations are insufficient to entitle him

to an evidentiary hearing under the applicable legal standard.  At the Court's direction, Petitioner,

through counsel, responded to the Objection.  Petitioner urges the Court to adopt Judge Bacharach's

recommendation for an evidentiary hearing.[1]  Also, the parties have filed supplemental briefs

---

[1] Petitioner also filed a timely objection to other portions of the Report, but his objection presented
no specific issue for review and was overruled in a prior order.  *See* Order of Dec. 7, 2010 [Doc. No. 20].

addressing *Harrington v. Richter*, 131 S. Ct. 770 (2011), which decided the proper standard of federal habeas review of a *Strickland* claim governed by 28 U.S.C. § 2254(d)(1) and noted the difficulty in "[s]urmounting *Strickland*'s high bar" when the claim is subject to *de novo* consideration. *See id.* at 788.

No party objects to Judge Bacharach's statements of the factual and procedural history of the case, which is adopted by the Court and summarized as follows:[2]

Petitioner stands convicted of two counts of first degree murder in the shooting deaths of Stanley Johnson and Beverly Meadows, for which Petitioner was sentenced to concurrent terms of life imprisonment, one without the possibility of parole.[3] Both victims were shot on November 5, 2001, at Mr. Johnson's home, where numerous people had gathered, after an argument broke out between Mr. Johnson and a young black male. Mr. Johnson suffered several gunshots from a .22 caliber firearm in the foot, right shoulder, and stomach; Ms. Meadows suffered three gunshots from a .38 caliber firearm, including a fatal shot to the head.

One eyewitness to events on November 5, 2001, was Jerry Leslie, a friend of Mr. Johnson, who testified at trial that he saw the black male shooting a pistol into the floor and "tussling" or wrestling with Mr. Johnson. Although Mr. Leslie did not know the identity of the shooter, he identified two other black males who were present as Andre Hutson (known as "Ray Ray") and Lincoln Edmundson (known as "Gooda"). Mr. Leslie testified that he left the house during the scuffle, after Mr. Edmundson and Mr. Hutson had also gone outside. Mr. Edmundson and other

---

[2] A failure to object waives further review of factual and legal issues. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).

[3] The prosecution sought the death penalty on both murder charges; the jury found an aggravating circumstance but rejected capital punishment.

witnesses identified Petitioner as the man arguing and "tussling" with Mr. Johnson, and shooting a small pistol into the floor.

Mr. Edmundson's testimony concerning the argument and pistol shots generally agreed with Mr. Leslie's account. Mr. Edmundson also testified that he, Mr. Hutson, and a third man who was present, Levell McBroom (known as "Smurf"), left the house soon after shots were fired. According to Mr. Edmundson, Petitioner walked outside when the gunfire stopped and asked Mr. Hutson for another gun, and Petitioner then reentered the house and shot Ms. Meadows with Mr. Hutson's .38 caliber handgun. The following persons present at the house during the events of November 5, 2001, also testified for the prosecution at trial: Mr. Hutson (who was charged as a co-defendant but pled guilty to a lesser charge of accessory to murder);[4] Mr. McBroom; Sherry Ellis (Mr. Leslie's common law wife); and Claudine Flemming (a friend of Mr. Johnson, and Mr. Edmundson's aunt). Petitioner testified in his own defense. He was represented throughout the district court proceedings, including trial, by retained counsel, Irven Box.

Petitioner appealed his convictions and sentences and, among several issues, raised a claim of ineffective assistance of counsel, based solely on his attorney's failure to request jury instructions on second degree murder and second degree manslaughter. Petitioner was represented on direct appeal by appointed counsel, S. Gail Gunning of the Oklahoma Indigent Defense System. The Oklahoma Court of Criminal Appeals (OCCA) affirmed in an unpublished opinion, finding no merit in the ineffective assistance claim because instructions on second degree murder and second degree manslaughter were not supported by the evidence. Petitioner then filed an application for post-conviction relief through retained counsel, R. Scott Adams (counsel of record in this case), and

---

[4] According to the trial record (State Exhibit 46), Mr. Hutson was sentenced in 2004 to a 25-year term of imprisonment. Petitioner's trial occurred in September, 2006.

raised an additional claim of ineffective assistance of counsel. The sole contention in support of this claim was that trial and appellate counsel were ineffective for failing to utilize information that Ms. Ellis had provided to homicide investigators during an interview (which was summarized in a written report produced in discovery), and failing to question her at trial about this information, either through cross-examination or by calling her as a defense witness. The substance of this information is addressed further herein as pertinent to the discussion.

The state district court denied Petitioner's post-conviction application in a written order, finding that the only claim proper for consideration was the claim of ineffective assistance of appellate counsel. The court found this claim lacked merit under *Strickland v. Washington*, 466 U.S. 668 (1984). The court also found the claim of ineffective assistance of trial counsel was procedurally barred and otherwise without merit under *Strickland*. *See Barnett v. State*, Case No. CF-2002-306, Order Denying Application for Post-Conviction Relief (D.C. Okla. County, Okla. Oct. 23, 2009) (copies appear in the case record as attachment 2 to the Petition [Doc. No. 1-2] and Exhibit 6 to the Response [Doc. No. 14-6]). On appeal from the order denying post-conviction relief, OCCA affirmed on the grounds that Petitioner had waived any additional allegations of ineffective assistance of trial counsel by failing to raise them on direct appeal, and that the record did not support his claim of ineffective assistance of appellate counsel. *See Barnett v. State*, No. PC-2002-1075, Order Affirming Denial of Post-Conviction Relief (Okla. Crim. App. Feb. 11, 2010) (copies appear in the case record as attachment 3 to the Petition [Doc. No. 1-3] and Exhibit 9 to the Response [Doc. No. 14-9]).

In the Petition in this case, Petitioner asserts in Ground Seven that he "received ineffective assistance of both trial and appellate counsel for failing to utilize the statements of Sherry Ellis at trial to show that another person and not [Petitioner] was the perpetrator of the murders." *See*

4

Petition, attach. 1 [Doc. No. 1-1] at 1.[5] Petitioner argues in support of this claim, as he did in state court, that the discovery produced to Petitioner's trial counsel included a homicide investigator's report summarizing the videotaped interview of Ms. Ellis on January 7, 2002. According to the report, Ms. Ellis made the following statements that Petitioner believes might have been helpful to him: 1) as she was getting into a car to flee the scene, she saw Mr. Edmundson come out of the house holding a small silver gun with a black handle (which could have been a .22 caliber used to shoot Mr. Johnson, and conflicts with Mr. Edmundson's statement to investigators that he exited the house with a shotgun); 2) as the car was driving away, she saw an unknown person continuing to "tussle" with Mr. Johnson inside the house; she reportedly described the person as one who "always hangs out with Ray-Ray" and identified a picture of Doyle Watkins (who is Ray-Ray's little brother); and 3) Ms. Ellis reported having heard that Mr. Johnson was killed because he was a witness to a previous murder. *See* Br. Supp. Pet. [Doc. No. 12] at 31-32. Petitioner argues that trial testimony by Ms. Ellis regarding these facts could have been used to show Petitioner "was not the triggerman" but, instead, Ray-Ray, his brother, and Mr. Edmundson "committed the murders and then conspired to pin it on [Petitioner]." *Id.* at 32-33.

Judge Bacharach's analysis of this claim begins with consideration of Respondent's position that Petitioner's claim regarding trial counsel is procedurally barred. A habeas claim may be barred by a petitioner's procedural default in state court "pursuant to an independent and adequate state procedural rule." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). "The Oklahoma requirement that a claim of ineffective

---

[5]  Judge Bacharach correctly notes that Petitioner does not explain his claim regarding appellate counsel but, presumably, the contention is that appellate counsel should have raised a claim of error regarding trial counsel's failure to utilize this information.

5

assistance of trial counsel be raised on direct appeal is an adequate ground for procedural default if (1) the defendant's counsel on direct appeal is different from trial counsel and (2) the claims can be resolved on the trial record alone." *Welch v. Workman*, 639 F.3d 980, 1012 (10th Cir. 2011) (citing *English*, 146 F.3d at 1263). Judge Bacharach finds the second of these two conditions is not met in this case, and thus, the Oklahoma procedural bar rule is not "adequate" for default purposes. *See* Report & Recom. [Doc. No. 17] at 38. Respondent does not challenge this finding in his Objection, and therefore, the Court does not consider it.[6]

Regarding an evidentiary hearing, Judge Bacharach finds that statutory restrictions imposed by § 2554(e)(2) do not apply but, instead, the applicable legal standard is provided by controlling case law. *See, e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citing *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000)). Again, Respondent does not disagree with this finding or with Judge Bacharach's statement of the applicable standard: A petitioner "is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel if his allegations, if true and not contravened by the record, would entitle him to habeas relief." *Mayes*, 210 F.3d 1284, 1287-88 (10th Cir. 2000) (citing *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998)); *see Littlejohn v. Trammell*, 704 F.3d 817, 857-58 (10th Cir. 2013). Respondent challenges only whether the standard has been met in this case. Accordingly, the Court limits its review to this issue, which must receive *de novo* consideration. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

To obtain relief on his ineffective assistance claim, Petitioner must satisfy the two-pronged test of *Strickland*; he must show both "that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional

_____

[6] The court of appeals' "firm waiver" rule requires a timely, specific objection to preserve an issue for *de novo* review by the district court. *See supra* note 2.

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. "These two prongs may be addressed in any order, and failure to satisfy either is 'dispositive.'" *Littlejohn*, 704 F.3d at 859 (quoting *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011). Upon careful consideration of the record in this case, the Court finds that Petitioner cannot satisfy either part of the *Strickland* test, and no evidentiary hearing is needed to reach this conclusion.[7]

On the performance prong, Petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In making this determination, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.

---

[7] With due respect for Judge Bacharach's careful analysis, he reaches a different conclusion based on a case that is both legally and factually distinguishable. In *United States v. Holder*, 410 F.3d 651 (10th Cir. 2005), the court of appeals held that a federal defendant seeking post-conviction relief under 28 U.S.C. § 2255 should have received an evidentiary hearing to determine the reasonableness of trial counsel's decision not to call as a defense witness at trial a person who was an eyewitness to a shooting death for which the defendant was convicted of second degree murder. As a factual matter, the omitted witness was one of three eyewitnesses to the shooting. The other two witnesses (one of whom was the defendant) testified at trial and gave conflicting accounts; the absent witness had previously testified before the grand jury that the defendant had fired in self defense and, thus, supported the defendant's version of events and theory of the case. As explained *infra*, the same is not true in this case.

7

To establish prejudice under the circumstances of this case, Petitioner must establish "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In assessing prejudice, the Court "looks at the totality of the evidence, not just the evidence helpful to the petitioner." *See Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999); *Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999).

### 1. Deficient Performance

The allegedly deficient acts or omissions of Mr. Box all hinge on a strategic decision not to utilize certain aspects of Ms. Ellis' pretrial statement to police, which allegedly might have been used to discredit the identification testimony of other eyewitnesses and raise a reasonable doubt about whether Petitioner was the shooter. Instead, Mr. Box elected to utilize a voluntary intoxication defense and to focus on avoiding the death penalty.[8] In his analysis, Judge Bacharach discusses certain pros and cons of Mr. Box's strategy, but concludes its reasonableness cannot be determined without additional information concerning Mr. Box's pretrial investigation of Ms. Ellis' statement.[9] Upon consideration of the entire state district court record, however, the Court finds the substance of Ms. Ellis' unsworn statement was explored during her preliminary hearing testimony

---

[8] Oklahoma law is clear that a defendant is not entitled to jury instructions on any lesser-included offense when he defends a charge by asserting he is innocent of any crime. *See Harney v. State*, 256 P.3d 1002, 1005 (Okla. Crim. App. 2011) (citing cases).

[9] In reaching this conclusion, Judge Bacharach characterizes Petitioner's claim as one alleging "a senseless failure to investigate Sherry Ellis' statement to the police." *See* Report & Recom. [Doc. No. 17] at 39. With due respect for Judge Bacharach, the Court has searched the Petition and Petitioner's brief in support of it, and has found no allegation or argument regarding the adequacy of Mr. Box's investigation. Petitioner argues only that his trial counsel should have elicited testimony by Ms. Ellis consistent with her pretrial statement, and should have pursued an innocence defense rather than one of diminished mental capacity. *See* Petr's Br. [Doc. No. 12] at 29-30.

and she recanted the parts that Petitioner has identified as potentially helpful to a misidentification defense. Accordingly, further investigation was unnecessary to evaluate the usefulness of her statement.

First, as to seeing Mr. Edmundson with a small silver gun, Ms. Ellis was questioned by the prosecutor about her statement, and she answered as follows:

> Q        Okay. Now, did you see Claudine's nephew [Mr. Edmundson] with any weapons?
> A        No.
> Q        And again when you talked to the police, did you say he had a small silver gun?
> A        No.
> Q        Didn't say that?
> A        No.

Tr. 3/15/02 Prelim. Hr'g, 59:2-9. Later in her preliminary hearing testimony, Ms. Ellis was asked a second time about what guns she saw, and she testified as follows:

> Q        Okay. Other than Ray Ray with the gun that you think is a .38 caliber, did you ever see any additional guns that night?
> A        No.
> Q        Okay and when you told police there was an individual with a small automatic – or I'm sorry, you did not tell the police that; is that correct?
> A        Huh-uh. I was just listening.
> Q        I'm sorry?
> A        Huh-uh.
> Court:  Is that no?
> Witness:  That's no.

Tr. 3/15/02 Prelim. Hr'g, 63:4-15. In other words, when testifying under oath, Ms. Ellis denied having seen Mr. Edmundson with a small silver gun on the night of the shootings.

Second, as to seeing a person who looked like Doyle Watkins "tussling" with Mr. Johnson, Ms. Ellis was questioned at length about her possible identification of the shooter, and she testified as follows:

Q      Now, did you see Stanley Johnson as you're driving away?

A      No.

Q      I want to ask you about that. When you talked to the police, did you make a statement to the police that as you're driving away, you see Johnson tussling through the open front door of the house?

A      Yeah.

Q      Okay. Well, tell me about that.

A      When I heard – when I heard the shots, when I ran and got my husband and we got in the car and we was driving off , I heard – I seen, you know, them in there fighting. I heard it, you know, and we got in the car and that's – you know, I just – we just drove off. I didn't go in there to look or nothing. I just – we just got in the car and we left. I didn't take no time to look in there or anything.

Q      When you talked to this detective, did you tell him that Johnson's on a chair and there's somebody on top of him?

A      Yeah, but that was what my husband was telling me.

Q      What did you see?

A      I didn't see – all I just seen in there, fussing and, you know – you know, just – you could hear stuff banging around.

Q      Well, you're saying fussing and you're moving your hands. Do I assume it was some kind of fight?

A      Well, you know, yeah. They was – you could hear stuff moving around, you know, like they was stumble [sic] – whoever he was scuffling with was – they was – you know, furniture was moving and they was tussling, you know. You could hear it.

Q      I think of that as a fight.

A      Well, it was a fight then.

Q      Stanley Johnson, and who's the other guy?

A      I don't know.

Q      It wasn't Ray Ray; is that correct?

A      No. I don't – he was outside.

             \*      \*      \*

Q      Now, the guy who was fighting or tussling or scrapping with Stanley Johnson, had you seen him before?

A      I don't even know who it was.

Q      Was he white or was he black?

A      He's black. He's black. I didn't see any white people there.

Q      Was he young or old?

A      I don't know. I didn't see him. I never did go back in the room. . . . I just heard, you know.

Q      As you're driving away, you see Stanley in this tussle as you've described –

A      Yeah.

Q      – with this other individual?

A      Yeah. That was like a glimpse, you know, because we was going . . . and then the front door was open, so I'm running to the car, getting in, and I just

glimpsed. That's how I – and I heard, you know, racket and then we just left. I never seen who was – he was tussling with or whatever. I didn't ever see them.

Tr. 3/15/02 Prelim. Hr'g, 60:6-62:18. Thus, like her statement about a small silver gun, Ms. Ellis flatly denied under oath any ability to identify Mr. Johnson's shooter.[10]

Finally, as to Ms. Ellis' statement that she had heard Mr. Johnson was killed because he witnessed a murder, this speculative hearsay is contrary to every other account of Mr. Johnson's murder, and says nothing about who committed the shootings. Other eyewitnesses to the conflict between Mr. Johnson and the shooter, including Mr. Leslie, testified consistently that it started with an argument over a beer can. *See* Trial Tr. vol II, 376:1-378:6 (Mr. Leslie); *id.*, 425:6-426:2, 428:14-429:8 (Mr. Edmundson). Further, everyone present who knew Petitioner (also known as Kinky) positively identified him as the person tussling with Mr. Johnson and shooting Ms. Meadows; these included Mr. Edmundson, Mr. McBroom, Ms. Flemming, and Mr. Hutson.[11] *See* Trial Tr. vol II, 425:20-23, 428:14-429:10, 434:14-435:20, 438:11-439:7, 445:18-446:21 (Mr. Edmundson); Trial Tr. vol. III, 485:10-14, 486:9-19, 487:1-6 (Mr. McBroom); *id.*, 568:9-569:3 (Ms. Flemming). Finally, the one person who knew all the people present that day, including the young men, was Ms. Flemming (Mr. Edmundson's aunt). She was asked to list all the people at Mr. Johnson's house at the time of the shooting, and did not name Doyle Watkins. *See* Trial Tr. vol. III, 565:11-566:17. In any event, Petitioner does not explain why he assumes Mr. Hutson or

---

[10] Ms. Ellis testified consistently at trial that she "saw somebody tussling in the front when we was driving away" and saw a flash from the firing of a shot, and she assumed Mr. Johnson was tussling with the shooter; she could not identify who was tussling. *See* Trial Tr. vol. II, 468:5-469:13.

[11] Mr. Hutson attempted at trial to avoid statements he made in connection with his guilty plea and during the pretrial investigation, as being involuntary and coerced. He admitted that he told investigators Petitioner used his gun to shoot Ms. Meadows, and portions of a videotaped recording of his interview were played at trial. Thus, although Mr. Hutson did not so testify at trial, jurors easily could have concluded that he had previously identified Petitioner as the shooter of both victims.

Mr. Edmudnson might have some connection to a previous shooting, assuming Ms. Ellis could have

testified about this rumor. Finally, all witnesses were clear that Mr. Edmundson and Mr. Hutson had

left the house before the fatal shots were fired.[12] In light of this evidence, and the lack of any

suggestion by Petitioner that investigating a rumor about a prior murder might have netted any

admissible evidence regarding his guilt or innocence, Mr. Box cannot be faulted for failing to pursue

Petitioner's newly suggested defense.[13]

For these reasons, accepting Petitioner's factual allegations to be true, the Court finds that

Petitioner has failed to show Mr. Box lacked a plausible reason for failing to utilize Ms. Ellis'

exculpatory statements, and thus, Petitioner has failed to show Mr. Box's acts or omissions

amounted to incompetent performance.

## 2.    Prejudice

In addition to establishing an error by trial counsel, Petitioner must show a reasonable

probability that the jury would have had a reasonable doubt about his guilt if Mr. Box had utilized

Ms. Ellis' pretrial statement in the manner now suggested. Upon consideration of the trial record,

---

[12] As noted above, *see supra* note 9, Ms. Ellis testified that another shot was fired during the scuffle between Mr. Johnson and the shooter, while she and others were fleeing. Ms. Ellis and Ms. Flemming both identified Mr. Hutson and Mr. Edmundson as the young men standing outside the house during the ongoing scuffle; Mr. Leslie identified Mr. Hutson as one of two men standing outside, but he did not know the other. *See* Trial Tr. vol. II, 389:3-6, 390:18-391:15, 397:7-398:2 (Mr. Leslie); *id.*, 465:21-466:2, 467:8-468:4 (Ms. Ellis); Trial Tr. vol. III, 569:21-570:8 (Ms. Flemming). Mr. McBroom confirmed that he fled the house as soon as shots were fired, with Mr. Hutson and Mr. Edmundson following soon after. *See* Trial Tr. vol. III, 487:1-17, 489:2-5.

[13] This new defense is actually inconsistent with the trial court record. Petitioner now argues that his friends conspired to convict him of murders committed by Doyle Watkins (or perhaps Mr. Edmunson and Mr. Hutson). However, none of his friends testified voluntarily for the prosecution at trial, and none was a cooperative witness. Particularly, Mr. Hutson (who had already been sentenced to a 25-year prison term and is now alleged to be protecting a younger brother) was so uncooperative that the trial judge had to bring in a public defender during Mr. Hutson's testimony to advise him about a possible charge of perjury. *See* Trial Tr. vol. III, 594:21-25, 600:24-601:5, 601:18-602:4.

particularly the testimony described above, the Court finds Petitioner has failed to allege sufficient facts to satisfy this burden.  Assessing the totality of evidence, the Court finds no reason to believe that presenting testimony consistent with the omitted parts of Ms. Ellis' pretrial statement would have resulted in a "not guilty" verdict.  In light of the unanimous testimony of witnesses who knew Petitioner, and whose testimony was fully consistent with the testimony of other eyewitnesses, any effort by Petitioner to deny his involvement in the shootings would have been easily discounted and rejected by the jury.  Thus, under the circumstances shown by the state court record, the Court finds that Petitioner's ineffective assistance claim also fails the prejudice prong of *Strickland*.

Of course, as to appellate counsel, Petitioner's ineffective assistance claim was rejected on the merits by state courts, and is subject to deferential review under the standard of § 2254(d).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788 (citations omitted).  Where a state court could have reasonably determined that defense counsel acted on strategic decisions and performed competently, and the state court could have reasonably concluded that there was no substantial likelihood counsel's actions altered the outcome of the case, federal habeas relief is unavailable.  *Id*. at 791-92.  In this case, Petitioner fails to present any argument that would satisfy this "doubly" deferential standard regarding appellate counsel.  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Accordingly, Petitioner's claim of ineffective assistance of appellate counsel lacks merit.[14]

---

[14]  Further, with respect to the issue of an evidentiary hearing, Petitioner has no right to a hearing on his claim of ineffective assistance of appellate counsel.  The Supreme Court held in *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Thus, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id*. at 1400 (footnote omitted).

**Conclusion**

For these reasons, the Court finds that the Petition lacks merit and should be denied in its entirety.

IT IS THEREFORE ORDERED that the Court sustains Respondent's Objection and declines to adopt the part of the Report and Recommendation [Doc. No. 17] that finds an evidentiary hearing is needed. Instead, the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is denied in its entirety. Judgment shall be entered accordingly.

IT IS SO ORDERED this 25th day of June, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE